**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**DAVID B. GEORGE**                                                                                                  **PLAINTIFF**

v.                                            **CASE NO. 4:17-CV-00028 BSM**

**CONAGRA BRANDS INC., et al.**                                                                    **DEFENDANTS**

## ORDER

David George appeals the termination of his long-term disability ("LTD") benefits under the Employee Income Security Act ("ERISA"). Termination of George's benefits is affirmed, judgment is entered for ConAgra Brands, Inc., ("ConAgra") and this case is dismissed with prejudice.

### I. BACKGROUND

George was a production and sanitation team leader at ConAgra. Administrative Record ("AR") at 99, Doc. No. 16; *see Garrison v. ConAgra Foods Packaged Foods*, LLC, No. 4:12-CV-00737-SWW, 2015 WL 366431, at *2 (E.D. Ark. Jan. 6, 2015). He scheduled the employees he supervised, assigned overtime, and initiated discipline. *Garrison*, 2015 WL 366431 at *4, 13–16, 17. George participated in ConAgra's Welfare Benefit Wrap Plan, which provided an LTD benefit. AR at 3.

To receive LTD benefits, a participant must prove he is disabled. *Id.* at 5. Once he is awarded benefits, the participant may continue to receive benefits if he periodically provides the plan administrator with "[p]roof of continued (1) Disability; (2) Regular Attendance of a Physician; and (3) Appropriate Available Treatment." *Id.* Benefits will

terminate if a participant fails to provide proof of disability or if the plan administrator determines that a participant is no longer disabled. *Id.* at 9.

To qualify as having a disability, the participant must show that: "(a) during the Elimination period and the next 24 months of Disability you are, as a result of Injury or Sickness, unable to perform the Material and Substantial Duties of your Own Occupation, and (b) for the remainder of the maximum benefit period you are, as a result of Injury or Sickness, unable to perform with reasonably continuity the Material and Substantial Duties of Any Occupation." *Id.* at 16.

"Material and Substantial Duties" are the responsibilities normally required of the employee, which cannot be reasonably eliminated or modified. *Id.* at 17. "Any Occupation" means an occupation a participant becomes reasonably fit to perform based on training, education, experience, age, physical, and mental capacity. *Id.* at 16. Proof of disability is evidence supporting a claim for benefits. *Id.* at 18.

The designee (plan administrator) has sole authority to administer the LTD plan, interpret its provisions, make findings of fact, correct errors, supply omissions, and determine the benefits payable. *Id.* at 20. The plan administrator's decisions are final and binding on all persons, subject only to the plan's claims procedure, and "may not be overturned unless found by a court to be arbitrary and capricious." *Id*.

Liberty Life Assurance Company ("Liberty"), the first plan administrator (designee), awarded LTD benefits to George in 2011 after he was injured in a motorcycle accident. *Id.*

at 548, 672–77. Cigna Group Insurance d/b/a Life Insurance Company of North America replaced Liberty as plan administrator in January 2013. Cigna requested additional information from George and his doctors. It also requested the examinations performed by the Social Security Administration. *Id.* at 76–77, 87–88. Cigna reminded George that he was responsible for ensuring that Cigna received the information. *Id.*

Cigna determined that George was no longer disabled based on the analysis of its claim manager, senior claim manager, nurse case manager, and an orthopedic surgeon, who reviewed George's medical records and files. *Id.* at 281–84, 552–55, 567–77, 614–15, 625–26.

The nurse case manager, Octavia Hopkins, R.N., concluded that the medical records did not support the determination that George was "totally disabled" or "unable to perform all job duties." She noted that George was performing light activities; he was mobile, with a cane if necessary; he had ninety-degree flexion in his knee which had improved; his wound looked "great" with no sign of infection; the fracture was healing on all four cortices; the medical records did not provide a treatment plan or return to work date; and there was no documented need for an ambulatory device. *Id.* at 153, 548.

The orthopedic surgeon, Mark Doyne, M.D., agreed that the medical records did not support a finding total or complete functional impairments. *Id.* at 154-55. Doyne noted that Dr. Garrison recommended that George engage in activities as tolerated, and that George had bought a new motorcycle that he had "been enjoying [] as well." *Id.* at 154–55, 548.

Cigna terminated George's benefits and explained his right to appeal and to submit new information. *Id.* at 283. George submitted a new physical ability assessment ("PAA") from Dr. Garrison, *id.* at 537–38, and medical records from Richard Calhoun, M.D., listing his history of anxiety and depression, *id.* at 513–31. The new PAA stated that George was unable to kneel or crouch. *Id.* at 550–51. It, however, confirmed that George was constantly able to sit, see, hear, grasp, lift and carry between ten to twenty pounds; frequently able to lift and carry up to twenty pounds, and push and pull up to 25 pounds; and occasionally able stand and walk. *Id*. The medical records from Dr. Calhoun noted George was improving and his mental health was normal. *Id.* at 516.

On appeal, Cigna affirmed the termination of benefits after considered the new information as well as an independent medical report and a transferable skills analysis ("TSA"). *Id.* at 123, 433–36.

In support of its decision, Cigna relied on Rafael Ruiz, M.D., a psychiatrist, who reviewed the medical records and concluded that George had no mental health related work restrictions. *Id.* at 126–27. Dr. Ruiz relied on George's medical exams which found him to be "alert, cooperative and with normal posture, gait, voice, affect, speech, thoughts, perception, attention, and with a good sense of well-being, no sleep problems, fatigue, exhaustion, appetite changes, memory changes, decline in mental ability." *Id.* at 127. George "presented with no anxiety and depression complaints per review of systems and mental status examination reported in within normal limits." *Id.* Dr. Ruiz also noted that

George's original treating physician was meeting with George merely to manage his medications. *Id.*

Cigna also relied on Randy Norris, a rehabilitation specialist, who found that George could work in the current labor market in Danville, Arkansas as a department manager or maintenance superintendent. *Id* at 494-95. This was based on a number of factors, including George's bachelor's degree in business administration; George's representation that he drove, used computers occasionally, and used a cane and wheelchair for mobility and assistance; George's employment history, including his work experience as a production/sanitation supervisor; George's restrictions and limitations as provided by Dr. Garrison; and George's wage requirements and skills and abilities, which include applying math skills to read and interpret business reports, planning and organizing work of others, making decisions based on business reports, and speaking and writing clearly. *Id.*

When Cigna affirmed the termination of benefits, George filed a second appeal. *Id.* at 480. Cigna again recommended that George submit new information to support his appeal, *id.* at 32–33, and contacted George's lawyer on two occasions requesting additional information, *id.* at 27–28, 30. No new information was submitted.

In the second appeal, two independent medical providers, Penny Chong, M.D., and Leighanne Harvey, M.D., reviewed the entire record. Colin Loris, a rehabilitation specialist, also performed a second TSA. Dr. Chong, relying on Dr. Garrison's reports, concluded restrictions beyond January 23, 2014, were not warranted. *Id.* at 326. Dr. Harvey, who

focused on George's mental health history and records, concluded that no restrictions were warranted. *Id.* at 328–32. Loris found that George could work in the current labor market in Danville, Arkansas as an office manager or maintenance superintendent. *Id.* at 333.

Cigna, again, affirmed the termination of George's LTD benefits. *Id.* at 335–36. George is now suing to reverse Cigna's termination of benefits.

## II. LEGAL STANDARD

When an ERISA benefits plan gives an administrator "discretionary authority to determine eligibility for benefits," the administrator's decision is reviewed for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

The ConAgra plan authorizes Cigna, as plan administrator, to interpret and construe the plan and to make final, binding determinations concerning the availability of benefits. AR at 21. All decisions and interpretations of the administrator are final, conclusive, and binding and may not be overturned unless they are found by a court to be arbitrary and capricious. *Id.* at 20. Thus, an abuse of discretion standard applies. *See Thompson v. ConAgra Foods, Inc.*, No. 1:14-CV-00041-KGB, 2016 WL 5886883 (E.D. Ark. Oct. 7, 2016) (reviewing a decision under the same plan for abuse of discretion).

The abuse of discretion standard requires the plan administrator's decision to be affirmed if a reasonable person *could* have reached a similar decision based on the same evidence. *Ferrari v. Teachers Ins. and Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002) (internal citation omitted). It does not, however, require that a reasonable person *would* have

reached that decision. *Id.* A reasonable decision is one based on substantial evidence. *See Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996). Substantial evidence is "more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000). A reviewing court cannot substitute its own opinions for those of the plan administrator. *Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1180 (8th Cir. 2001). When a conflict in medical opinions exists, the plan administrator does not abuse its discretion by adopting one of the opinions over the other, as long as the opinion is reasonable. *See Donaho*, 74 F.3d at 901.

## III. DISCUSSION

This case must be dismissed because Cigna's decision to terminate George's benefits was supported by substantial evidence.

George argues that "no evidence" was cited in Cigna's letter terminating benefits to justify termination, and that "all of the records" indicate the George was unable to perform "any type of employment activities." Doc. No. 17 at 8. Contrary to this position, Cigna had substantial evidence that George was not "totally disabled" or "unable to perform all job duties." *Id.* at 153–54. This evidence includes the analysis of a claim manager, senior claim manager, nurse case manager, and a board certified orthopedic surgeon, as well as medical records from Dr. Garrison, records from George's family practice physician, and his Social Security Disability benefits award. AR at 281–84, 552–55, 567–77, 614–15, 625–26.

Although George's treating physicians, Doctors Garrison and Saul, opined that

George was unable to perform all job duties and was indeed disabled, Cigna's medical experts disagreed. Cigna did not abuse its discretion by adopting the reasonable opinions of its experts. *See Donaho*, 74 F.3d at 901; *see also Dillard's Inc. v. Liberty Life Assur. Co. of Boston*, 456 F.3d 894, 899 (8th Cir. 2006) (An administrator may deny benefits based upon the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physicians unless the record does not support the denial.).

George's argument that neither appeal contained sufficient evidence to support Cigna's termination of benefits is unpersuasive. Cigna considered all comments, medical records, and other information supplied by George and gave George several opportunities to provide additional support for his claim. Cigna consulted with neutral independent health care professionals, showed no deference to previous determinations in each appeal, and referred each appeal to different decision-makers. Further, the medical opinions of Doctors Ruiz, Chong, and Harvey, as well as the two separate TSAs supported Cigna's conclusion that George was not disabled.

Finally, George alleges that Cigna abused its discretion by relying on the two TSAs because they mischaracterize his work experience. Consequently, the TSAs identify jobs that he is physically able to perform but lacks the skills to perform. Doc. No. 17 at 13. This argument is interesting but does not carry the day.

George was required to prove that he is "unable to perform with reasonable continuity the Material and Substantial Duties of Any Occupation." AR at 16. "Any Occupation" is

defined as an occupation that George's "training, education, experience, age, physical, and mental capacity" reasonably qualifies him to perform. *Id.* The three positions identified by the TSAs—maintenance superintendent, office manager, and department manager—are within the restrictions identified by George's treating physician, Dr. Garrison. *Id.* at 333, 494–95. In identifying those positions, the rehabilitation specialists relied on George's representations that he earned a bachelor's degree in business administration, uses a computer, and has held supervisory positions for other employers from 1996 to 2006. *Id.*

Moreover, George was a team leader in the production and sanitation departments at ConAgra. He managed hourly employees, monitored their performance, identified rules violations, directed the work of others, and participated in hiring, firing, and advancement of subordinates. *Garrison*, 2015 WL 366431, at *2, *7–17. Although George asserts that his duties at ConAgra are not transferable, many of his duties are transferable supervisory duties. And, the fit between occupations does not have to be perfect, it must only be reasonable. AR at 16.

## IV. CONCLUSION

For the reasons set forth above, judgment is entered for ConAgra, and this case is dismissed with prejudice.

IT IS SO ORDERED this 2nd day of January 2019.

_____
UNITED STATES DISTRICT JUDGE